### AS TO THE VESTING OF AN ESTATE IN REMAINDER.

Court of Appeals for Champaign County.

HESTER A. McCREA v. JOHN W. McCREA.

Decided, June 8, 1915.

*Wills—Devise to the "Heirs of His Body"—Enlarged by Addition of the Words "in Fee Simple"—Meaning of the Words "Children" and "Heirs of the Body" as Used by a Testator.*

A devise to my son George "during his natural lifetime only, and at his death to the heirs of his body in fee simple," the words "in fee simple" are inconsistent with the preceding limitation "to the heirs of his body" and have the effect of enlarging the grant to one of fee simple in the heirs of the body of George, who therefore take by purchase, the estate in remainder becoming operative after the death of George and when his heirs are ascertainable.

*J. E. Bowman*, for plaintiff in error.
*L. D. Johnson* and *Deaton & Bodey*, contra.

ALLREAD, J.; FERNEDING, J., and KUNKLE, J., concur.

This action involves a construction of the following clause of the will of Wallace McCrea:

"All the rest and residue of said real estate now owned by me, the same being about 148 acres, I bequeath to my son, George McCrea, during his natural lifetime only, and at his death to the heirs of his body in fee simple. The above bequest of a life estate to my son, George McCrea, in the 148 acres of land is subject to the further provision that he is to pay to my granddaughter, Bell Pratt, the sum of $650.00 in one and two years after my death."

George McCrea, to whom the life estate was devised, survived the testator. George had two children, John and Mary, both of whom were living when the will was executed and both of whom survived the testator.

Mary died in the lifetime of her father, unmarried and without issue, but leaving a will devising her estate to her mother, Hester A. McCrea.

John survived the father and claims the whole estate as "heir."

Hester claims one-half of the estate under the devise from Mary upon the theory that Mary had a vested interest.

The case presents a very interesting question and has been fully and ably presented by counsel both orally and in written briefs.

We have quoted the devise at large because of the provision charging George with a certain payment to Belle Pratt, the representative of a deceased daughter of the testator. This charge was, however, only against George and while it might tend to enlarge his estate in case the provisions were doubtful, we do not see how it could enlarge the remainder.

We think, therefore, the final construction of the will rests upon the following words:

"I bequeath to my son George McCrea during his natural lifetime only, and at his death to the heirs of his body in fee simple."

Counsel for plaintiff in error contend that the words "heirs of his body in fee simple," creates a vested remainder in fee in the children of George.

The effect to be given the words "in fee simple" is the turning point. For without such added words, the term "heirs of his body" would be easy of definition. Upon examination of authorities, we find that the proposition is generally accepted that in a devise to "heirs" or "heirs of the body" where there are superadded words creating a fresh limitation, the "heirs" take not by way of limitation, but by way of purchase. The superadded words in such case indicate an intention not to use "heirs of the body" as words of limitation, but, in the language of Mr. Justice Swayne in *Daniel* v. *Whartonby*, 17 Wallace, 639, to make the issue, "the springhead of a new and independent stream of descent."

In our own state the superadded words to have such effect must be wholly inconsistent with the preceding limitation "heirs of the body." The use of the words "heirs and assigns" is not

sufficient. See *Harkness* v. *Corning,* 24 O. S.. 425, and authorities cited.

Still we believe that the words "in fee simple" are broader than the general words "heirs and assigns" and are inconsistent with the preceding limitation "to the heirs of his body," and have the effect of enlarging the grant to one of fee simple in the "heirs of the body" of George McCrea who, therefore, take by purchase. *Timanus* v. *Drugan,* 43 Md., 402; *Boykin* v. *Ancrem,* 28 S. C., 486; *Stephenson* v. *Hagan,* 15 B. Monroe (Ky.), 282; *Read* v. *Fogg,* 60 Me., 479; 4 Kent Com., 221; *DeVaughn* v. *Hutchinson,* 165 U. S., 566; *Tanner* v. *Livingston,* 12 Wendell (N. Y.), 83; *Heard* v. *Horton,* 1 Den. (N. Y.), 165.

We conclude, therefore, that the words "heirs of his body" as employed in the creation of the remainder are used as words of purchase and are mere *designatio personarum.*

It does not, however, follow as a necessary result that "heirs of the body" means the children living at the testator's death. This becomes a question of construction. We must, therefore, look to the provisions of the will to determine whether the testator meant "children" in its broad sense or whether he meant "heirs" in a legal sense.

Counsel for plaintiff in error rely upon the case of *Linton* v. *Laycock,* 33 O. S., 128, but it will be observed that in that case the court had before it a devise to "children" and not a devise to "heirs of the body." There is a vital difference between the word "children" and the words "heirs of the body." When a testator refers to "children," he is presumed to contemplate those who stand in that relation at the time when the will takes effect. The term children includes the offsprings of living as well as deceased parents. The words "heirs" in a legal sense and *prima facie* in popular acceptation means the legal representatives of a deceased ancestor. The term "heirs" is a technical word and carries its legal acceptation unless a different intention appears from other parts of the will.

When, therefore, the testator in the case at bar used the words "heirs of his body" he is presumed to have intended those who would stand in that relationship at the death of his

son, George McCrea, for the maxim *"nemo est haeres viventis"* would control.

In the case of *Bunnell* v. *Evans,* 26 O. S., 409; *King* v. *Beck,* 14 Ohio, 559, and *Poor* v. *Hart,* 11 N.P.(N.S.), 49 (aff. 84 O. S., 489), the word "heirs" was held to mean "children" because of other reference in the wills indicating such intention. It was, however, remarked by Read, J., in the case of *King* v. *Peck* in respect to the meaning of the word "heir" that: "A mere presumed intention will not control its legal signification and operation."

Reference is also made by counsel for plaintiff in error to the case of *Custer* v. *Yeoman,* 32 C. C., 476, in which the remainder was devised to the lawful heirs of a person living and in which the word "heirs" was held synonymous with children. In that case, however, it was apparent from the will that the estate might have vested in these so-called heirs prior to the death of their father so that the testator must evidently have intended to use the word "heirs" in the place of "children." Here the estate in remainder was intended to become operative after the death of George and when his heirs were ascertainable. The language employed is entirely reconcilable with the view that the testator meant to use the word "heirs" as applying to those who would stand in that relation at the death of George.

While it may be that the word "heirs" is sometimes used by laymen as synonymous with the children, yet such use of the word is not so general as to affect its *prima facie* meaning. Besides, it appears that this will was drawn by a lawyer or at least by some one familiar with legal phrases and this adds to the force of the presumed intention of the testator that the word "heirs" was used in a technical or legal sense.

In the case of *Read* v. *Fogg, supra,* Appleton, C. J., makes the following observation which is quite pertinent here:

"By the terms of the deed, a life estate is given to Margarite Read. 'After her decease' the remainder 'goes to her legal heirs.' No one is the heir of the living. The heirs are those who shall be such at the decease of the person holding the life estate. They may be different individuals at different periods

of time during the continuance of the intermediate estate, as they were in the case under consideration. The remainder, therefore, is contingent. The fee vests when the contingency ceases.''

Chancellor Kent in his commentaries (Vol. 4, page 208), classifies remainders, contingent or dubious as to the persons who are to take, as follows:

''The fourth class of contingent remainders is where the person to whom the remainder is limited is not ascertained, or not in being. As in the case of the limitation to two persons for life, remainder to the survivor of them; or in the case of a lease to A for life, remainder to the right heirs of B then living. B can not have heirs while living and if he should not die until after A the remainder is gone, because the particular estate failed before the remainder could pass.''

We think, however, that the principle underlying the recent case of *Barr* v. *Denny*, 79 O. S., 359, as announced in the opinion is conclusive of the case at bar.

It is true that the case of *Barr* v. *Denny*, like the cases of *Sinton* v. *Boyd*, 19 O. S., 30, and *Ritchie* v. *Johnson*, 30 O. S., 208, was one where there was no grant except as implied in a direction to distribute, yet the implied devise was merely an indication of testamentary intention. The intention to defer the vesting of the estate because of uncertainty as to the devisees may appear as clearly where the testator grants the remainder to persons whose indentity is uncertain or dubious and capable of ascertainment only at a future time and upon the happening of a future event. Davis, J., in *Barr* v. *Denny*, says:

''But if there is a gift over in future after the expiration of an indeterminate estate, not to specified individuals or to a definite class, but to persons not ascertained or not in being at the time of the bequest, the legacy is contingent and does not vest until the time of distribution.''

Additional importance may be drawn from the reference of Davis, J., in the same opinion to the case of *Bigley* v. *Watson*, 98 Tenn., 358, where a devise of realty to a widow for life and

at her death to the testator's heirs, was held to create a contingent remainder, the fee going to such persons only as answered to the description of heirs at law of the testator at the widow's death.

Judge Davis quotes the following from the Tennessee case:

"The remainder was contingent, because the testator obviously intended the land to be divided at the death of his widow among such persons as should then sustain to him the relation of heirs at law. The remaindermen are to be ascertained not at his death, but at the death of his widow, or life tenant; and they are to be such persons as would at that time be his 'heirs at law.' At his death, when the will took effect, those persons were 'dubious and uncertain' and, therefore, the remainder must be contingent."

See also *Weston* v. *Weston*, 38 O. S., 473, and *Lisle* v. *Miller*, 21 C.C.(N.S.), 317; 35 C. D., 127.

The case of *Heard* v. *Horton*, *supra*, may be classed with *Custer* v. *Yeoman*, *supra*, but at any rate the opinion in *Barr* v. *Denny* should prevail.

We, therefore, reach the conclusion that although the words "heirs of his body in fee simple" as appearing in the will under consideration are held to be words of purchase, yet they were intended to apply to those who answered that description at the death of George and that the remainder was contingent and did not vest until the death of George. John, therefore, being the only person who answered the description of "heirs" at the time the estate vested, takes the entire estate.

It therefore follows that the judgment of the court of common pleas should be affirmed.