POLLOCK ET AL. *v.* BRAYTON ET AL.

(Decided March 31, 1924.)

*Messrs. Mallon & Vordenberg* and *Mr. Harry Marble,* for plaintiffs.

*Mr. E. S. Aston, Mr. Dean F. Brayton, Mr. John J. Weitzel, Mr. Joseph T. Harrison, Mr. W. W. Bellew, Mr. Milton Sayler, Messrs. Shaffer & Williams, Mr. Ralph Kreimer, Mr. C. Schneiders, Messrs. Dempsey & Dempsey, Mr. Charles H. Stephens, Jr.,* and *Mr. Frank Woodward,* for defendants.

CUSHING, J. Plaintiffs William T. Pollock and others, in their action for partition of real estate instituted in the court of common pleas of Hamilton county, claim that they and Dean F. Brayton are

tenants in common in the property described in the petition.

The defendants claim to have an interest in the property by purchase from Edward Charles Pollock.

Thomas B. Tullis died in 1849. His will was probated that year. His three children, Jeremiah Tullis, Mary Anne Ludlow, and Martha Pollock survived him.

Jeremiah Tullis died in 1878, unmarried and without children.

Mary Anne Ludlow died in 1896. Her husband did not survive her, nor did she leave children.

Martha Pollock, a minor at the death of her father, subsequently married and had five children. Her son, William Pollock, is living. Emma Pollock, a daughter, born 1855, died in 1860. Martha Pollock Brayton died 1885. Her grandson, Dean F. Brayton, is living. Another daughter, Martha Pollock Gould, is living. Edward Charles Pollock died in 1919, unmarried, and without children. Martha Pollock died in 1921.

About 1896 Edward Charles Pollock undertook to convey an interest in the real estate in question to certain persons, who are now defendants in this action.

The question for determination is whether or not Edward Charles Pollock had an interest in said real estate that he could convey. This question must be determined from a construction of the following clause of the will of Thomas B. Tullis.

"I will and devise the above mentioned real estate to each heir as above specified to them for their lifetimes and after their deaths to their bodily heirs in fee simple and should either of them die without

bodily heirs then to descend to the other heirs for their lifetime and after their deaths to their bodily heirs and farther should any heirs leave no heirs then I wish my property as above described to descend to Thomas T. Hontaman for his lifetime and then after his death to his bodily heirs.''

The defendants claim that the will created a vested remainder in the children of Martha Pollock, and that Edward Charles Pollock had a vested remainder in an undivided one-fourth of the estate, and that the purchasers from him stand in his place.

In considering this question, it must be observed that neither Jeremiah Tullis, Mary Ann Ludlow, nor Martha Pollock had bodily heirs at the time of the death of the testator. Therefore, if it was the intention of the testator that the remainder should vest in the bodily heirs of his children, there was no definite or certain person in being to whom the interest could pass to be enjoyed *in futuro*.

It is argued that the testator used the term ''bodily heirs'' in the sense of ''children,'' designating a class that he intended should take under the will; that the remainder vested in the first born of such class, subject to open and let in after-born children. Counsel cite and rely on the case of *Doe, Lessee of Poor,* v. *Considine,* 73 U. S. (6 Wall.), 458, 18 L. Ed., 869. The provision of the will in that case was different from the one under consideration. It provided:

''But, if he leave two or more children, then I give and devise the said farm unto such children and their heirs, to be equally divided between them.''

It did not need a judicial construction to determine

that the testator intended to designate a class.  He so stated.

In the case at bar, the language is ''to their bodily heirs in fee simple.''  If we adopt the construction here contended for, Emma Pollock had an equal share with her brothers and sisters.  The estate would therefore be divided into five parts.  The children of Martha, whether dead or alive, would be vested with the fee.  This is inconsistent with the express provisions of the will when considered as a whole.  There can be no difference between the situation of Emma Pollock and Edward Charles Pollock.

It is clear from the will that the testator intended that his devisees, specified in the will, should have the estate for their lives, without qualifications.  He did not contemplate that their estate might be forfeited by waste or otherwise.  It would follow that his intention was that the estate should not vest in any one until it was finally determined who the bodily heirs of his blood were that could take the property after the termination of the life estate; and, if there were none such, then it was to go to Hontaman.

In considering this question, we can eliminate Jeremiah Tullis and Mary Ann Ludlow.  The estate was to go to Martha Pollock, without reservations, for her life; and, at her death, the remainder was given to her bodily heirs in fee simple.  This view is strengthened by the settled principles of law that no one is heir to the living.  The bodily heirs for whom the remainder was intended are those who shall be such bodily heirs at the decease of the person holding the life estate.  Those in expectancy may be, and in

this case were, different individuals at different periods of time during the continuance of the intermediate estate. In such case, the remainder is contingent, and the fee vests when the contingency ceases. *Read* v. *Fogg,* 60 Me., 479.

In their briefs counsel have argued that an estate tail was created; others contend that it was a vested remainder; and some claim that it was a contingent remainder.

The usual form of limitation in an estate tail is, "To A and the heirs of his body." But, as "heirs" is the only word of art in such limitation, any sufficient words of procreation may follow, such as "To A and his bodily heirs." The language of this will is in one respect different from the requirements necessary to create an entailed estate. It provides, "And after their deaths to their bodily heirs in fee simple." It has been held that the words "in fee simple" are inconsistent with the limitation "to their bodily heirs," or "the heirs of his body," and the phrase has the effect of enlarging the grant to one in fee simple in the bodily heirs of Martha Pollock, who, by reason of such words, take the estate by purchase.

In the case of *McCrea* v. *McCrea,* 5 Ohio App., 351, Judge Allread says in the opinion, at page 355:

"When, therefore, the testator in the case at bar used the words 'heirs of his body' he is presumed to have intended those who would stand in that relationship at the death of his son, George McCrea, for the maxim *'nemo est hæres viventis'* would control."

This construction is not inconsistent with the provision of Section 10578, General Code, which reads as follows:

"When lands, tenements, or hereditaments are given by will to a person for his life, and after his death to his heirs in fee, or by words to that effect, the conveyance shall vest an estate for life only in such first taker, and a remainder in fee simple in his heirs."

While the facts in the case of *Barr* v. *Denney,* 79 Ohio St., 358, 87 N. E., 267, are different from the provisions of the will in this case, yet it seems to us that the reasoning of Judge Davis in that case correctly states the rule. He says at page 368 (87 N. E., 268):

"But if there is a gift over *in futuro* after the expiration of an intermediate estate, not to specified individuals or to a definite class, but to persons not ascertained or not in being at the time of the bequest, the legacy is contingent and does not vest until the time of distribution."

In *Doe, Lessee of Poor,* v. *Considine, supra,* the court in the opinion says:

"A contingent remainder is where the estate in remainder is limited either to a dubious and uncertain person, or upon the happening of a dubious and uncertain event."

There can be no question that the remainder was contingent, as there was no person in being to whom the remainder was given, and it was uncertain whether any of the heirs of Thomas B. Tullis would survive him; and, if they did, whether they would have bodily heirs, and in fact two of the three children did not have.

Our conclusion is that as Edward Charles Pollock undertook to dispose of an interest in the estate 25 years before the death of the life tenant, and that

he in fact predeceased his mother, and, as only such of her children as survived her could take the property under this will, it follows that Edward Charles Pollock did not have any estate that he could convey and that the fee to the property vested in William Pollock, Mary Ann Pollock Gould, and Dean F. Brayton, at the death of Martha Pollock, and that they are now tenants in common and are entitled to have the property partitioned among them.

*Decree accordingly.*

BUCHWALTER and HAMILTON, JJ., concur.