NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2237
_____

KEITH WHITMORE,

Appellant

v.

SUPERINTENDENT FOREST SCI;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE COMMONWEALTH OF PA
_____

On Appeal from the United States District Court
for the Eastern District Pennsylvania
(D.C. Civil No. 2:20-cv-01390)
District Judge: Honorable Gene E. K. Pratter
_____

Argued on December 10, 2025

Before: KRAUSE, PHIPPS and FISHER, *Circuit Judges*.

(Filed: March 13, 2026)

Rosemary Auge  **ARGUED**
Federal Community Defender Office for the Eastern District of Pennsylvania
Capital Habeas Unit
601 Walnut Street
The Curtis Center, Suite 545 West
Philadelphia, PA 19106


Peter F. Andrews  **ARGUED**
David Napiorski
Anthony Salzetta

Philadelphia County Office of District Attorney
3 S Penn Square
Philadelphia, PA 19107

———————

OPINION[*]
———————

FISHER, *Circuit Judge*.

Although habeas relief is difficult to obtain, a court must provide each petitioner a fair opportunity. Keith Whitmore never received that opportunity. In his habeas petition, Whitmore alleges that he informed his trial counsel that Officer Dennis Johnson, a critical witness, was biased against him and that his trial counsel failed to investigate Johnson's bias. Without the information that might have been discovered through investigation, Whitmore's trial counsel failed to impeach Officer Johnson. Whitmore was subsequently convicted of first-degree murder, as well as other serious crimes, and received a mandatory life sentence without parole. Whitmore's allegations, if true, show ineffective assistance. But neither the state nor the federal district court gave Whitmore a chance to prove those allegations. We will remand for an evidentiary hearing and give him that

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

chance.[1]

Because the state court denied Whitmore's petition on the merits, we can grant him federal habeas relief only if the state court's decision is contrary to clearly established federal law or is an unreasonable application of that law.[2] The state court's decision is neither. First, the Superior Court used the governing *Strickland v. Washington*[3] standard and, therefore, applied the correct legal rule.

Second, Whitmore cannot show that the Superior Court unreasonably applied *Strickland*. True, counsel's failure to conduct a pretrial investigation generally constitutes ineffective assistance.[4] And Whitmore swears that, although he informed his trial counsel about Johnson's harassing, intimidating, and threatening him because of his relationship with Johnson's niece, counsel failed to investigate this bias. But only Whitmore's self-serving affidavit supports these allegations. So, the Superior Court correctly ruled that, at

---

[1] The District Court had jurisdiction under 28 U.S.C. § 2254(a) (habeas corpus). We have jurisdiction under 28 U.S.C. §§ 1291 (final decisions of district courts) and 2253(a) (habeas corpus appeals).

[2] 28 U.S.C. § 2254(d)(1).

[3] 466 U.S. 668, 687 (1984). Under Pennsylvania law, the familiar two-part *Strickland* analysis is a three-part test. "[T]o prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). Despite the additional prong, the Pennsylvania standard is identical to *Strickland. Commonwealth. v. Pierce*, 527 A.2d 973, 977 (Pa. 1987); *Werts v. Vaughn*, 228 F.3d 178, 203–04 (3d Cir. 2000).

[4] *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989); *see also Strickland*, 466 U.S. at 690–91.

that time, "the record [did] not support" Whitmore's claim.[5]

However, Whitmore never got the opportunity to develop that record. Although he repeatedly requested an evidentiary hearing, neither the state nor the district court gave him one. Because Whitmore alleges facts that, if proven, would entitle him to federal habeas relief, the District Court should have given him a hearing.

Both statute and precedent limit a habeas petitioner's ability to get an evidentiary hearing. We conclude—and each party agrees[6]—that neither limit applies here. Under 28 U.S.C. § 2254(e)(2), a federal district court may not hold an evidentiary hearing if the petitioner "has failed to develop the factual basis of a claim in State court proceedings." But Whitmore never "failed to develop the factual basis of [his] claim."[7] He promptly sought "an evidentiary hearing in the manner required by state law,"[8] but the state court refused. Because Whitmore is again asking for his first bite at the apple, § 2254(e)(2)'s bar does not apply.

The Supreme Court explained in *Cullen v. Pinholster* "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."[9] We reasoned that, "[i]n light of *Pinholster*, district courts cannot conduct evidentiary hearings to supplement the existing state court record under 28

---

[5] App. 500.
[6] Appellant's Br. 46–48; Appellees' Br. 36 n.2.
[7] 28 U.S.C. § 2254(e)(2).
[8] *Morris v. Beard*, 633 F.3d 185, 195 (3d Cir. 2011).
[9] 563 U.S. 170, 181 (2011).

4

U.S.C. § 2254(d)."[10] But "there is an exception when the state court has denied the petitioner a hearing because it thought that he would lose *even if* his allegations were presumed true."[11] In such a circumstance, "*Pinholster*'s bar does not apply if that ruling was unreasonable as a matter of clear federal law."[12]

Whitmore satisfies this exception. The Superior Court rested its conclusion that Whitmore's allegations "lack[ed] arguable merit" on two alternative grounds.[13] One was that "the record does not support a finding that counsel was even aware of the supposed animosity Johnson harbored toward Whitmore."[14] But the other was that, even accepting the truth of Whitmore's "self-serving affidavit," Whitmore needed "to produce [] evidence to corroborate this allegation" in order to meet the threshold for "arguable merit."[15] That is, because the Superior Court found that Whitmore's allegations, even if true, would not merit relief, the Superior Court denied Whitmore's request for a hearing and dismissed his petition.[16] But, as we explain below, Whitmore "has alleged facts that would make [his lawyer's] conduct objectively unreasonable under *Strickland* and the

---

[10] *Brown v. Wenerowicz*, 663 F.3d 619, 629 (3d Cir. 2011).
[11] *Fooks v. Superintendent, Smithfield SCI*, 96 F.4th 595, 598 (3d Cir. 2024).
[12] *Id.*
[13] App. 500.
[14] *Id.*
[15] *Id.*; *Commonwealth v. Barnett*, 121 A.3d 534, 540 (Pa. Super. 2015).
[16] *See* App. 500 (finding that Whitmore's claim "lack[ed] arguable merit"); *Commonwealth v. Jones*, 876 A.2d 380, 385 (Pa. 2005) (explaining that "if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim of trial counsel ineffectiveness, he or she will have failed to establish the arguable merit prong related to the claim").

5

[state court's] contrary ruling unreasonable under [S]ection 2254(d)(1)."[17] Accordingly, *Pinholster* does not bar an evidentiary hearing here.

Although nothing prevents him from getting a federal evidentiary hearing, Whitmore is not automatically entitled to one. Whitmore "must make 'a *prima facie* showing that would enable him to prevail on the merits of [his] claim.'"[18] In other words, we ask whether Whitmore's "factual allegations, 'if true, would entitle [him] to federal habeas relief.'"[19] But "if the record refutes [his] factual allegations or otherwise precludes habeas relief," no hearing is required.[20] "[W]e review the state court's decision on the merits deferentially, granting relief only if it was unreasonable."[21] Under *Strickland*'s familiar two-part test, we consider whether counsel's performance was deficient and, if so, whether it prejudiced Whitmore.[22] Whitmore has made a *prima facie* showing of ineffective assistance.

First, Whitmore has sufficiently alleged deficient performance, which is conduct that "fell below an objective standard of reasonableness."[23] *Strickland* permits trial counsel to "make a reasonable decision that makes particular investigations

---

[17] *Fooks*, 96 F.4th at 598 (first alteration in original) (quoting *Jordan v. Hepp*, 831 F.3d 837, 850 (7th Cir. 2016) (distinguishing *Pinholster* on similar grounds)).

[18] *Id.* (alteration in original) (quoting *Morris*, 633 F.3d at 196).

[19] *Id*. (alteration in original) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)).

[20] *Schriro*, 550 U.S. at 474.

[21] *Fooks*, 96 F.4th at 598.

[22] *Strickland*, 466 U.S. at 687.

[23] *Id*. at 688.

unnecessary."[24] But when there is a "complete failure to investigate," trial counsel "has not yet obtained the facts on which such a decision could be made," and trial counsel's failure to investigate "cannot be characterized as the product of strategic judgment."[25]

To support his ineffectiveness claim, Whitmore attached to his state-court petition an affidavit in which he swears that before trial he informed his counsel about Johnson's bias. Whitmore claimed that he told his counsel about several specific instances where Johnson harassed, intimidated, and threatened him because he was dating Johnson's niece. When he continued to bring Johnson's bias to counsel's attention, Whitmore says counsel assured him that "he had someone looking into it."[26] But, Whitmore argues, the record is devoid of evidence that counsel conducted any investigation whatsoever, and he asserts that counsel never did.[27]

The Commonwealth responds that the record does not support Whitmore's allegation. Johnson testified that he recognized Whitmore from the neighborhood. Concerned that the jury could infer that Johnson knew Whitmore from a prior arrest,

---

[24] *Id.* at 691.

[25] *Gray*, 878 F.2d at 711.

[26] App. 426.

[27] Our dissenting colleague suggests that our analysis "expands" Whitmore's arguments "to include a failure to investigate Johnson's alleged bias." Dissenting Op. 1. But Whitmore raised this argument from the beginning and throughout this case. *See, e.g.*, App. 369 (arguing that "trial counsel ineffectively failed to investigate . . . the credibility of [Johnson]" in his state habeas petition); App. 542 (same in the District Court habeas petition); Appellant's Br. 21 ("Trial counsel was ineffective for failing to investigate . . . .").

Whitmore's counsel asked for a sidebar and requested a limiting instruction. The judge told Whitmore's counsel that he could re-call Johnson to the stand and clarify that Johnson knew Whitmore from his years patrolling the area. But counsel declined because he was "afraid of opening the door."[28] The trial judge asked what Whitmore's counsel was afraid of, and Whitmore's trial counsel said, "I don't know if [Johnson] arrested [Whitmore] in the past."[29] The prosecutor chimed in, "He has arrested him. He recognized him from the neighborhood, but he was also arrested for narcotics."[30]

According to the Commonwealth, the fact that Whitmore's counsel failed to mention at sidebar Johnson's alleged history with Whitmore undermines Whitmore's assertion that he informed his trial counsel about Johnson's alleged bias. Whitmore responds that the sidebar discussion shows only "that counsel did so little investigation into Johnson's prior relationship with Whitmore that he did not even know whether Johnson had previously arrested Whitmore."[31]

Whitmore's position is the more logical one. Nothing in the record refutes Whitmore's allegation that he informed trial counsel of Johnson's bias. In fact, the discussion at sidebar suggests that Whitmore's counsel failed to conduct even a cursory investigation into Whitmore's past relations with Johnson. Although one could infer from

---

[28] App. 177.
[29] *Id.*
[30] *Id.*
[31] Appellant's Br. 24.

counsel's comments that he investigated and simply did not recall whether any of the alleged incidents of harassment led to an arrest, this is a strained and less plausible reading of counsel's comment. The more natural reading is that counsel did not know whether Johnson had earlier arrested Whitmore because counsel failed to investigate Johnson's prior interactions with Whitmore.

The Commonwealth next argues that, even if Whitmore told his counsel about Johnson's alleged bias, a competent trial counsel may have sound reasons for failing to question a witness about a defendant's prior negative interactions with a police officer. For example, the Commonwealth argues that Whitmore's prior negative encounters with Johnson would have been more prejudicial to the defense than the prosecution and that impeaching Johnson would invite the testimony of other officers, which could in turn open the door to testimony disclosing the circumstances surrounding Whitmore's arrest at Hawthorne Street—a separate incident that occurred about two months after the Sliwinski shooting.[32]

Each of these might be a reason not to impeach Johnson. But none explain why a competent attorney would not have investigated Johnson's bias in the first place. Beyond Whitmore's affidavit, "there is no record . . . as to what preparation or investigation, if

---

[32] The trial court did not allow the Commonwealth to elicit testimony from Officer Johnson that, during Whitmore's arrest at the Hawthorne Street incident, Kevin Lucas claimed that Whitmore shot at him and threw a gun into the bushes. App. 286. Likewise, the trial court prohibited the Commonwealth from calling Lucas to testify about Whitmore's shooting a gun on Hawthorne Street. *Id*.

any, was performed by counsel . . . , nor is there any record of why counsel [might have] chose[n] not to undertake investigation . . . ."[33] Based on Whitmore's affidavit and the sidebar conversation, we cannot infer that counsel investigated and, therefore, we cannot defer to counsel's decision not to impeach Johnson. [34] Accordingly, Whitmore has established a *prima facie* case that his trial counsel performed deficiently.

Second, Whitmore has alleged facts that, if true, would show that trial counsel's alleged deficiency prejudiced Whitmore. To show prejudice, Whitmore "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[35] A reasonable probability is one "sufficient to undermine confidence in the outcome."[36] Prejudice "must be evaluated in light of the

---

[33] *Marshall v. Hendricks*, 307 F.3d 36, 106 (3d Cir. 2002).

[34] Because counsel's impeaching Johnson for bias might have "plac[ed] evidence of [Johnson's] bad character or criminal history before the jury," Dissenting. Op. 2, our dissenting colleague concludes that, even presuming the truth of Whitmore's allegations, counsel's failure to investigate Johnson's bias was "objectively reasonable based on the preexisting state-court record . . . ," Dissenting. Op. 3. Not so. As discussed above, *ante* at 6–7, a trial counsel may reasonably conclude that a particular decision is unnecessary; however, a counsel's "complete failure to investigate,"—which is precisely what Whitmore alleges and what the pre-existing state-court record shows—"cannot be characterized as the product of strategic judgment." *Gray*, 878 F.2d at 711. Without first investigating Johnson's bias, trial counsel lacked the facts necessary to reasonably determine whether impeaching Johnson's bias was appropriate. After all, if trial counsel investigated so little (if at all) that he did not even know whether Johnson previously arrested Whitmore, *see* App. 177, trial counsel could not have plausibly determined that the value of impeaching Johnson's bias would be outweighed by the potential prejudice Whitmore might suffer by opening the door to his criminal history.

[35] *Strickland*, 466 U.S. at 694.

[36] *Id.*

10

totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'"[37]

Whitmore argues that his counsel's failure to investigate Johnson's bias caused prejudice because, with information obtained through an investigation, trial counsel could have impeached Johnson, who he argues was a critical witness for the Commonwealth. The Commonwealth responds that Whitmore overstates the value of Johnson's testimony and that impeaching Johnson would have opened the door to Whitmore's prior bad acts, which would have proved prejudicial to Whitmore.

Officer Johnson's testimony was critical. Although Johnson did not testify that he saw Whitmore with the gun or that he saw Whitmore hide the gun, Johnson was the only witness who testified about Whitmore's close proximity to the firearm at the Hawthorne incident,[38] which the Commonwealth presented as the weapon definitively used in the shooting where Andrew Sliwinski was wounded and Scott Sliwinski was killed.[39] No

---

[37] *Gray*, 878 F.2d at 711 (quoting *Strickland*, 466 U.S. at 696).

[38] *See* App. 175 (Johnson's testifying that he went to the bushes near where Whitmore was standing and "observe[d] a silver gun").

[39] *See* App. 291–92 (Andrew Sliwinski describing the shooting); App. 318 (Commonwealth emphasizing that Whitmore was "arrested with a gun"); App. 319 (Commonwealth arguing that Whitmore "was found with th[e] murder weapon just three blocks away" from where the Sliwinski shooting occurred); App. 319–20 (Commonwealth telling the jury that "[y]ou know that this was the gun" and "[y]ou know, based on the evidence that this is what killed Scott Sliwinski").

11

other witness testified about Whitmore's proximity to the firearm.[40] In fact, the testimony underscores the importance of the firearm to the Commonwealth's case. Even after interviewing JL and NP—the two juvenile witnesses who identified Whitmore as the Sliwinski shooter—the police did not apply for an arrest warrant until "some other information came forward later on."[41] The "other information" was that "[Whitmore] had been arrested with th[e] weapon."[42]

Notwithstanding Johnson's testimony, the Commonwealth argues that impeaching his credibility would not have changed the jury's verdict because this case primarily relied on the testimony of the two juvenile eyewitnesses. But those eyewitnesses, important as they were, testified inconsistently with one another. NP said that he saw Whitmore with a silver gun, but JC said he saw Whitmore with a black gun. And although NP consistently identified Whitmore as the shooter, JC testified that the shooter looked like Whitmore "but [he] couldn't really tell."[43] These identifications are not overwhelmingly supportive of the jury's verdict. Without Johnson's testimony connecting Whitmore to the firearm, there is a reasonable probability that the jury would

---

[40] *See, e.g.*, App. 178–79 (Detective Hopkins testifying that he recovered the firearm, but never mentioning Whitmore); App. 179–95 (Officer Weitman testifying only about his ballistics examination of the firearm); App. 296 (Detective Bamberski, who was not present at Whitmore's arrest, testifying without personal knowledge that Whitmore was arrested with a gun).

[41] App. 296.

[42] *Id*.

[43] App. 269.

not have convicted Whitmore.

The Commonwealth argues, however, that Whitmore's trial counsel could not have meaningfully exposed Johnson's alleged bias without opening the door to Whitmore's prior bad acts, including an occasion when Johnson previously arrested Whitmore for narcotics. But besides the prosecutor's comment at sidebar (which is not evidence), nothing in the record shows that Johnson previously arrested Whitmore and, if so, whether the arrest led to a conviction. Moreover, a prior arrest for narcotics would have only a minimal effect, if any, on the jury's perception of Whitmore, who NP and JC already described as a drug dealer. The Commonwealth also argues that on re-direct, Johnson might have testified that, just before Whitmore's arrest on Hawthorne Street, Kevin Lucas and Whitmore shot at each other. But Johnson's testimony alone supports this assertion—no one other than Johnson heard Lucas's version of events, and Lucas later recanted. Without more, we cannot say that impeaching Johnson would have hurt Whitmore's case more than helping it. Accordingly, Whitmore has shown that he was prejudiced by his trial counsel's alleged deficiency.

In light of the foregoing analysis, Whitmore has established a *prima face* case of ineffective assistance. At the very least, a "hearing would have the potential to advance the petitioner's claim."[44] Yet, the Superior Court overread the record to foreclose habeas

---

[44] *Morris*, 633 F.3d at 196 (quoting *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000)).

relief. Although Whitmore "cannot show that the Superior Court applied *Strickland* unreasonably to the non-existent factual record, he has shown that it unreasonably held his allegations meritless under *Strickland* even if they were true."[45] So, the Superior Court should have remanded for a hearing. And because Whitmore never got the state evidentiary hearing he sought, he should have gotten such a hearing in federal court. The District Court erred by not giving him one.

Therefore, we will vacate and remand to the District Court for a hearing.

---

[45] *Fooks*, 96 F.4th at 599.

PHIPPS, *Circuit Judge*, dissenting.

The theory behind Keith Whitmore's habeas petition seeking relief from his convictions for first-degree murder, attempted murder, aggravated assault, carrying a firearm without a license, and possession of an instrument of a crime, is that Dennis Johnson, the police officer who found the gun alleged to be the murder weapon, was motivated to link the weapon to Whitmore because he did not like Whitmore dating his niece. At first, that bad-motive or bias theory sounds promising, as does Whitmore's Sixth Amendment claim that his counsel was ineffective for not exploiting Johnson's bias at trial. *See* Order, ECF No. 10 (3d Cir. May 24, 2023) (granting a certificate of appealability "as to [Whitmore's] claim that counsel rendered ineffective assistance *by failing to impeach* Officer Dennis Johnson regarding his personal bias toward [Whitmore]" (emphasis added)). The Majority Opinion buys into that argument, expands it (beyond the scope of the certificate of appealability) to include a *failure to investigate* Johnson's alleged bias, and concludes that the District Court erred by denying an evidentiary hearing to Whitmore to develop an ineffective-assistance-of-counsel claim for failure to investigate.

That chain of reasoning is flawed. It was objectively reasonable for Whitmore's counsel not to investigate Johnson's bias more thoroughly because the introduction of any evidence of Johnson's bias at trial would be highly likely to backfire. The options for introducing evidence of Johnson's bias – through cross-examination of Johnson or through the direct testimony of his niece, another witness, or even Whitmore himself – would open the door and allow the prosecution to use otherwise inadmissible evidence to rehabilitate Johnson's credibility. Those rehabilitation efforts could include justifying Johnson's alleged dislike of Whitmore dating his niece. And with the door open, the prosecution

could seek to elicit that Johnson's bias was based on his opinion that Whitmore had bad character – or worse, that his bias was based on Whitmore's prior arrests and convictions.

When viewed through the lens of the two elements of a Sixth Amendment ineffective-assistance-of-counsel claim – deficient performance and prejudice – Whitmore cannot make the requisite *prima facie* showing for an evidentiary hearing, and without one, his habeas petition was correctly denied. *See Fooks v. Superintendent, Smithfield SCI*, 96 F.4th 595, 598 (3d Cir. 2024) (explaining that § 2254(d)(1) evidentiary hearings are not "automatic" but instead require a habeas petitioner to present a *prima facie* case on the merits of his claim). *See generally Strickland v. Washington*, 466 U.S. 668, 687 (1984).

As to performance, courts are reluctant to second-guess strategic decisions of counsel. *See id.* at 691 ("[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). Yet, for Whitmore to win requires just that, questioning and doubting the objective reasonableness of not investigating Johnson's alleged bias despite the potential for any impeachment of Johnson on bias grounds to do far more harm than good. Even more, such a hearing is unnecessary since it is objectively reasonable for counsel to try – sometimes at great cost – to avoid placing evidence of a criminal defendant's bad character or criminal history before the jury, and impeaching Johnson on bias grounds would open the door to those lines of inquiry. *See Lesko v. Sec'y Pa. Dep't of Corr.*, 34 F.4th 211, 238 (3d Cir. 2022) (recognizing the "potentially catastrophic risk" associated with opening the door to evidence of a criminal defendant's criminal history). Thus, even if Whitmore's allegations of his counsel's nonfeasance – not investigating and not impeaching – were presumed true, they were objectively reasonable based on the preexisting state-court record, so no evidentiary hearing was needed. *See Cullen v.*

*Pinholster*, 563 U.S. 170, 181 (2011) (announcing the general principle that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"); *cf. Fooks*, 96 F.4th at 598 (articulating an exception to the *Pinsholster* principle "when the state court has denied the petitioner a hearing because it thought that he would lose even if his allegations were presumed true"). Accordingly, based only on the performance prong, the District Court did not abuse its discretion in denying an evidentiary hearing or err as a matter of law in denying Whitmore's § 2254 habeas application.[1]

For similar reasons, the prejudice prong is unmet. Further investigation alone or even further investigation coupled with a successful impeachment of Johnson would not have a "reasonable probability" of changing the outcome of the trial. *Strickland*, 466 U.S. at 694; *see also Ellison v. United States*, 120 F.4th 338, 340 (3d Cir. 2024), *cert. denied*, 145 S. Ct. 1963 (2025). Again, impeaching Johnson on bias grounds would open the door to the reasons for Johnson's bias, and those could easily have had greater persuasive force with the jury than successful proof of Johnson's bias. In addition, Johnson was not the only witness the prosecution called to prove that Whitmore was the shooter – there were also the two juvenile eyewitnesses. While their testimony was not airtight, they did corroborate Johnson's association of Whitmore with the gun. So even if defense counsel had investigated Johnson's bias and impeached Johnson at trial on those grounds, there was corroboration of Johnson's testimony and independent grounds for the jury to have

---

[1] The Majority Opinion reaches the opposite conclusion by characterizing Whitmore's challenge to his counsel's performance as a "complete failure to investigate." *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989). But the Supreme Court's pronouncement continues to govern: "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. And as explained, even crediting Whitmore's account, his attorney's decisions not to investigate Johnson's bias or to impeach him were objectively reasonable.

3

convicted Whitmore. Altogether, there is not a reasonable probability that further investigation of Johnson's potential bias or even impeachment of Johnson on bias grounds would have altered the outcome of trial. Without a *prima facie* case of prejudice, no evidentiary hearing was needed, and Whitmore's habeas application was correctly denied. *See Fooks*, 96 F.4th at 598.

For these reasons, I respectfully dissent.